**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOE HAND PROMOTIONS, INC.,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:22-251** |
| **v.** | : | **(JUDGE MANNION)** |
| **CONCRETE CITY CAFÉ INC.,** *et al.,* | : | |
| **Defendants** | : | |
| | : | |

## MEMORANDUM

Pending before the court is the plaintiff's motion for default judgment. (Doc. 8). Upon review, the plaintiffs' motion will be **GRANTED IN PART AND DENIED IN PART**.

Since none of the defendants have responded to this action in any manner[1], the following facts come from directly from the plaintiff's complaint. (Doc. 1). The plaintiff, Joe Hand Promotions, Inc., specializes in distributing and licensing premier sporting events to commercial locations such as bars, restaurants, lounges, clubhouses, and similar establishments. By contract, the plaintiff was granted the exclusive right to license and distribute the

---

[1] The defendants were required to file an answer on or before May 19, 2022. However, defendants failed to appear, answer, or otherwise respond to the summons and complaint.

*Ultimate Fighting Championship® 246: Conor McGregor vs. Donald Cerrone* broadcast on January 18, 2020, and the *Deontay Wilder vs. Tyson Fury* II broadcast on February 22, 2020, including all undercard bouts and commentary associated with those programs, to commercial establishments throughout the United States. The plaintiff entered into agreements with various commercial establishments which, in exchange for a fee, allowed those establishments to exhibit the programs to their patrons. In so doing, the plaintiff expended substantial monies to market, advertise, promote, administer, and transmit each of the programs to the establishments.

The defendants, who are named as Concrete City Café, Inc., GSJenkins, LLC d/b/a Concrete City Café, Glen E. Jenkins, and Susan M. Jenkins, did not contract with the plaintiff to purchase authorization to exhibit the programs, nor did they pay a fee to the plaintiff to obtain the proper license or authorization. The defendants did not have the plaintiff's permission or authority to receive and exhibit the aforementioned programs in their establishment. Instead, the complaint alleges that, by unauthorized satellite transmission or, alternatively, by unauthorized receipt over a cable system, the defendants willfully intercepted or received the interstate communications of the programs or assisted in such actions. The defendants then unlawfully transmitted, divulged, and published the programs, or assisted in unlawfully

- 2 -

transmitting, divulging and publishing the programs to patrons in their establishment. Without authorization, license, or permission to do so from the plaintiff, the defendants exhibited each of the programs to their patrons within their establishment.

Based upon the foregoing, the plaintiff filed the instant action claiming that the defendants' actions constituted satellite piracy in violation of 47 U.S.C. §605 or, in the alternative, cable piracy in violation of 47 U.S.C. §553. (Doc. 1). When the defendants failed to plead or otherwise defend in a timely manner, default was entered by the Clerk of Court against the defendants. (Doc. 6). The plaintiff has now moved for default judgment against the defendants (Doc. 8) and has filed a brief in support of its position (Doc. 9).

Federal Rule of Civil Procedure 55 provides, in relevant part:

(b) **Entering a Default Judgment**.

\* \* \*

(2) *By the Court*. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

    (A) conduct an accounting;

    (B) determine the amount of damages;

    (C) establish the truth of any allegation by evidence; or

    (D) investigate any other matter.

Fed. R. Civ. P. 55.

Where a party moves for default judgment, the court must evaluate the following: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Laborers District Council Construction Industry Pension Fund v. Miniscalco Corp.*, 2022 WL 802165, *2 (E.D.Pa., March 16, 2022) (quoting *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)); *see also, e.g., Int'l Union of Operating Eng'rs v. N. Abbonizio Contractors*, 134 F.Supp.3d 862, 865 (E.D. Pa. 2015). In considering these factors, the court is to accept all factual allegations in the complaint as true. *Id.* (citing *Serv. Emps. Int'l Union v. ShamrockClean Inc.*, 325 F. Supp. 3d 631, 635 (E.D. Pa 2018)). However, "a party in default does not admit mere conclusions of law," so before considering the *Chamberlain* factors, the court must consider "whether the unchallenged facts constitute a legitimate cause of action." *Id.* (quotation marks omitted). Should default judgment be

appropriate, it "must not differ in kind from, or exceed, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

In reviewing the allegations of the plaintiffs' complaint, the court finds the complaint is sufficient to state a claim for satellite piracy in violation of 47 U.S.C. §605[2] or, in the alternative, for cable piracy in violation of 47 U.S.C.

---

[2] Title 47 U.S.C. §605 provides, in relevant part:

(a) Practices prohibited

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing

*(footnote continued on next page)*

§553[3]. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint must include sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face").

Moving then to the factors to be considered in relation to a motion for default judgment: First, because the defendants have failed to defend

---

that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

[3] Title 47 U.S.C. §553 provides, in relevant part:

**(a)    Unauthorized interception or receipt or assistance in intercepting or receiving service; "assist in intercepting or receiving" defined**

**(1)** No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

    **(2)** For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

themselves, the plaintiff suffers prejudice if it does not receive a default judgment because it has no alternative means of vindicating its claim. Second, there is no showing that the defendants have a meritorious defense because the defendants have failed to respond or otherwise defend themselves. *See Directv, Inc. v. Asher*, 2006 WL 680533, at *2 (D.N.J. Mar. 14, 2006). Third, the defendants' failure to respond permits the court to draw an inference of culpability on in its part. *See Surdi v. Prudential Ins. Co. of Am*., 2008 WL 4280081, at *2 (D.N.J. Sept. 8, 2008) (citing *Palmer v. Slaughter*, 2000 WL 1010261, at *2 (D. Del. July 13, 2000) (when defendant "has failed to answer, move, or otherwise respond to the complaint, the entry of a default judgement against him is appropriate")). All the factors therefore weigh in favor of entering default judgment.

In its complaint, the plaintiff requests statutory damages of up to the maximum amount of $110,000.00 for each willful violation of §605, or alternatively, for statutory damages of up to the maximum amount of $60,000.00 for each violation of §553.[4] In addition, the complaint seeks

---

[4] As this court has previously provided, §§553 and 605 are mutually exclusive, so a party may not recover under both for a single act of piracy. *Joe Hand Promotions, Inc. v. Becchetti*, 2013 WL 4520638, at *2 (M.D. Pa. Aug. 26, 2013) (citing *TKR Cable Co. v. Cable City Corp*., 267 F.3d 196, 207 (3d Cir.2001) (finding provisions to be mutually exclusive); *Joe Hand Promotions, Inc. v. Krist*, 2013 WL 3756439, *1 (W.D.Pa. July 15, 2013)

*(footnote continued on next page)*

attorneys' fees, interest, and costs of suit pursuant to §605(e)(3)(B)(iii) or, alternatively, pursuant to §553(c)(2)(C). However, in its motion for default judgment, the plaintiff seeks $3,000.00 in damages under §605(e)(3)(C)(i)(II), $9,000.00 in damages under §605(e)(3)(C)(ii), costs in the amount of $602.96, and attorneys' fees to be determined.

The first of the two statutory damage provisions relevant here provides:

> [T]he party aggrieved may recover an award of statutory damages for each violation of subsection (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i)(ll).

The second provision, commonly referred to as an enhanced damages provision, provides:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual

---

("When a defendant is liable under both §553 and §605, the aggrieved plaintiff may only recover damages under one of the sections but not both."); *J & J Sports Productions, Inc. v. 4326 Kurz, Ltd*., 2008 WL 4630508, *3 (Oct. 17, 2008) ("the Third Circuit has stated that plaintiffs may not recover under both §605 and §553 because they apply to different signal types"). Here, the plaintiff has requested damages under §605.

or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii).

With regard to the plaintiff's request for fees under §605(e)(3)(C)(i)(II), as this court has previously stated, the starting point for computing statutory damages in cases such as this one is the amount of forgone revenue that the plaintiff suffered as a result of defendants' piracy. *Joe Hand Promotions, Inc. v. Becchetti*, 2013 WL 4520638, *3 (M.D.Pa. Aug. 26, 2013) (citations omitted). Here, the plaintiff has filed an affidavit with rate cards showing the fees venues were charged to broadcast the events at issue. The fees are based on the venue's maximum capacity.

The plaintiff has also submitted an affidavit from one of their investigators at Omega Protective Services, LLC., Ryan Zaengle. Mr. Zaengle indicates that the Concrete City Café is a "small establishment" with seating for about ten people at the bar. On the right side of the establishment is "booth seating with two small round tables". Based on his observations, Mr. Zaengle estimates the approximate capacity at the defendants' establishment as seventy to eighty people. Mr. Zaengle was at the Concrete City Café on February 22, 2020, the day the *Deontay Wilder vs. Tyson Fury II* broadcast was shown. At no time during the events did he witness more

than ten people in the establishment, including Omega agents, bar staff and customers.

Based on the rate cards submitted, an establishment with a maximum capacity of 51-75 people would pay a fee of $980 for the *Ultimate Fighting Championship® 246: Conor McGregor vs. Donald Cerrone* broadcast, while an establishment with a maximum capacity of 76-100 people would pay a fee of $1,095. An establishment with a capacity of  1-100 people would pay a fee of $1,450 for the *Deontay Wilder vs. Tyson Fury* II broadcast. While the plaintiff is looking to recover the higher fee for the *Ultimate Fighting Championship® 246: Conor McGregor vs. Donald Cerrone* broadcast, given the evidence of record, the court finds the plaintiff entitled to the lower $980 fee for the *Ultimate Fighting Championship® 246: Conor McGregor vs. Donald Cerrone* broadcast and $1,450 for the *Deontay Wilder vs. Tyson Fury* II broadcast for a total of $2,430.[5]

---

[5] The court notes that the plaintiff is also looking to recover $455.00 for "compensation to account for any profits gained by Defendants from the increased proceeds coming from the sale of drinks, and/or meals sold to patrons as an indirect result of their unlawful actions." Given the scant evidence of record, the court finds these fees are not warranted. The plaintiff has produced no evidence with respect to the patronage at the *Ultimate Fighting Championship® 246: Conor McGregor vs. Donald Cerrone* broadcast. The evidence with respect to the *Deontay Wilder vs. Tyson Fury* II broadcast indicates that, at most, there were ten people in attendance, including Omega agents, bar staff and customers.

In addition to basic statutory fees, the plaintiff seeks enhanced damages of $9,000 under §605(e)(3)(C)(ii). In order to award enhanced damages, the court must find that defendants willfully pirated the events for purposes of direct or indirect commercial advantage or private financial gain. 47 U.S.C. §605(e)(3)(C)(i)(II). Section 605 is written in the conjunctive, so plaintiff must show that the conduct was both willful and for commercial advantage or private financial gain. As to the willful element, courts have generally found that the act of pirating itself sufficiently evidences intent because the viewer can only access the program by unscrambling an encrypted signal, something that is virtually impossible to do accidentally. *Joe Hand Promotions, Inc. v. Becchetti*, 2013 WL 4520638, at *3 (citations omitted).  While it may be theoretically possible to accidentally access the television program at issue, it is highly unlikely, and the defendants have relinquished their opportunity to rebut the plaintiff's argument by failing to respond to the pleadings. Therefore, the court finds that the defendants willfully accessed the program.

To determine whether the defendants pirated the program for commercial advantage or financial gain, the court will assess the following five factors as originally articulated by the District of New Jersey: "the number of televisions broadcasting the event, the existence of a cover charge, sale

of food or drink, advertisement of the event in the defendants' bar, and a demonstration that defendants made more money or conducted additional business by illegally broadcasting the event." *Id.* (citing *J & J Sports Productions, Inc. v. Kraynak*, 2013 WL228962, at *5 (M.D.Pa. Jan. 22, 2013); *J & J Sports Productions, Inc. v. Munguti*, 2007 WL 928479, *3 (D.N.J. March 27, 2007)). However, these factors are not exhaustive nor, as far as the court can tell, should they necessarily be given equal weight.

Here, there were allegedly two televisions in The Concreate City Café, both behind the bar. Mr. Zaengle noted that he bought both food and a soda at the establishment for an unspecified amount. No cover charge was taken for the event. There is evidence that the events were advertised both on the Facebook page for the Concrete City Café and on the Facebook page of Glen Edward Jenkins, Sr. Finally, and perhaps most importantly, the plaintiff has failed to provide any evidence or allegations that defendants profited from the events or conducted additional business because of it. In fact, Mr. Zaengle indicated that, at most, there were a total of ten individuals in the bar, including Omega agents, bar staff and patrons. The plaintiff has failed to convince the court that the results of the head counts are probative of anything other than the normal ebb and flow of customers at Concrete City

Café. Therefore, the court will deny the plaintiff's request for enhanced damages.

Pursuant to §605(e)(3)(B)(iii), the plaintiff also seeks costs and attorneys' fees. As to costs, the plaintiff has submitted the declaration of Ryan R. Janis, Esquire, whose firm represents the plaintiff in this action. Attorney Janis represents that the plaintiff incurred costs of $402.00 to file and $200.96 to effectuate service in this action. (Doc. 9-7, 9-13). The court finds the plaintiff's request for costs supported and reasonable. The plaintiff will therefore be awarded costs in the total amount of $602.96.

With respect to attorneys' fees, the plaintiff requests that the court permit the plaintiff to file a fee application for fees from defendants. The court will grant the plaintiff's request and allow the plaintiff to file a fee application in support of its request for attorneys' fees under §605(e)(3)(B)(iii).

In light of the foregoing, an appropriate order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE:  September 29, 2023**
22-251-01

- 13 -